IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MARGIE MCRAE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEBRA ANN ELLIS; PAULINE ELLIS; )<br>CANDACE ELLIS; and DOES 1-3, )<br>)<br>Defendants. ) | CV 315-037 |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Based on the evidence introduced at the September 3, 2013 hearing, and for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's amended complaint be **DISMISSED** for lack of subject-matter jurisdiction and this civil action be **CLOSED**.

**I.   AMENDED COMPLAINT ALLEGATIONS**

The amended complaint asserts nine claims for (1) tortious interference with business relations; (2) vandalism; (3) malicious prosecution; (4) harassment; (5) conspiracy; (6) fraudulent inducement, (7) intentional misrepresentation; (8) trespass; (9) and civil RICO violations. (See generally doc. no. 30.) Taking all allegations of the amended complaint as true, for purposes of the present analysis only, the facts are as follows.

1

This lawsuit arises out of the lease by Plaintiff of a house in McRae, Georgia to Defendants. (Doc. no. 30, pp. 2-3.) Plaintiff entered into the lease on December 8, 2014, in reliance upon Defendants' representations that Debra Ellis was Debra McCrimmon, that Debra Ellis was the wife of Billy McCrimmon, and that the married couple was interested in buying the house at some unspecified date in the future. (Id.) Upon discovering that they were not married, and that Debra's last name was Ellis, Plaintiff issued a notice of lease termination on December 17, 2014 and stated her intention to file a dispossessory action on January 20, 2015. (Id.) Plaintiff lost the dispossessory action on February 12, 2014, when the Magistrate Court of Telfair County found the misrepresentations as to last name and marital status to be an invalid basis for eviction. (Id.)

Plaintiff next asked Defendants for permission to place a "For Sale" sign in the window of the rental house, which Defendants refused while also threatening Plaintiff. (Id. at 7.) By letter dated February 13, 2015, Plaintiff advised Defendants she would not visit the house because of their threats, and stated her intention to file a complaint for tortious interference with her business. (Id. at 4-5.) On March 7, 2015, Plaintiff received notice of a hearing concerning an arrest warrant filed against her by Defendant Debra Ellis. (Id. at 4-5.) At the March 12, 2015, hearing, the state court ejected Defendant Candace Ellis for courtroom misconduct and dismissed the arrest warrant. (Id. at 5.) During the hearing, Defendants turned over the house keys to Plaintiff and relinquished possession of the house. (Id.)

The next day, Plaintiff conducted an inspection and found damage that included a smashed wall at the head of the bathtub, cracked tile in the hall, damaged screen doors, a bent garage lock, and tears and marks in the linoleum. (Id.) At some later unspecified date, Defendant Pauline Ellis filed a lawsuit in Wheeler County alleging personal injury caused by a defect in the rental home. (Id. at 6.) That personal injury lawsuit is still pending.

## II. PLAINTIFF'S HEARING TESTIMONY REGARDING DAMAGES

Plaintiff alleges that the bulk of her damages relates to her claim for tortious interference with business relations, caused by her inability to place a "For Sale" sign in the window of the rental house. (Court's recording system, *For The Record*, (hereinafter "FTR"), 11:57:15 – 11:58:33.) Defendants' obstruction of this attempt to sell the rental house precluded Plaintiff from completing her plan of selling two rental houses, as part of a tax-deferred exchange under 26 U.S.C. § 1031, to acquire a house owned by her father in New Jersey worth approximately $200,000. (Id.) Plaintiff testified that her damages are $200,000 because she is unable to buy the house in New Jersey without the tax-deferred § 1031 exchange. (FTR 11:59:10 – 11:59:23.) Plaintiff conceded in her testimony, however, that she has not lost the opportunity to perform this same transaction because she still owns both of the rental houses in question, her father still owns the New Jersey home, and her father is still willing to sell this home to her for the same price. Plaintiff also conceded that the amount of capital gains for which she could receive a tax deferment by performing the § 1031 exchange is approximately $43,000.. (FTR 12:49:10 – 12:49:21.)

Plaintiff testified that her damages for the vandalism claim are approximately $4,300 in repairs performed by two contractors to remedy the damage inflicted by Defendants at the rental house. (FTR 12:10:45 – 12:16:05; FTR 12:02:00 – 12:02:10; FTR 12:12:30 – 12:14:31; Exhibit 2.)

As to the malicious prosecution claim, Plaintiff testified that her damages are $1,000 in travel expenses incurred to attend court hearings concerning the arrest warrant and personal injury lawsuit. (FTR 12:17:55 – 12:18:49.) Plaintiff also testified that the criminal charges caused her to suffer emotional distress that manifested itself as high blood pressure, depression, fatigue, and inertia. (FTR 12:18:49 – 12:25:35.) Plaintiff's harassment claim is redundant of the malicious prosecution claim, except that she also alleges Debra Ellis threatened her. (FTR 12:27:16 – 12:27:49.) Plaintiff did not testify or introduce any evidence as to damages for this claim. (Id.)

As to the Georgia RICO claim, Plaintiff stated her intent to drop this claim because of her belief that it is frivolous, and she stated that there are no damages associated with this claim. (FTR 12:28:04 – 12:28:14.) As to the conspiracy claims, Plaintiff initially appeared to claim damages of $8,000 from the personal injury lawsuit but then testified that this amount has been "disproved" and that damages for the conspiracy claims are the same as for the malicious prosecution claim. (FTR 12:28:14 – 12:30:30.)

Concerning the fraudulent inducement and intentional misrepresentation claims, Plaintiff claims $40,000 in damages caused by her inability to sell the rental house and complete the § 1031 exchange. (FTR 12:32:43 – 12:33:01.) This amount is equal to the

4

value of the rental house. (Id.) Regarding the trespass claim, Plaintiff presented no evidence of damages and merely testified that Defendant Debra Ellis drove up to the gate of her residence, then left. (FTR 12:36:20- 12:38:25.)

### III. THE AMOUNT-IN-CONTROVERSY IS FAR LESS THAN $75,000.

Federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1332(a), diversity jurisdiction over a civil action exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000. Generally, the Court should defer to the value the plaintiff places on her claim, and "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (quoting St. Paul Mercur y Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "However, where jurisdiction is based on a claim for indeterminate damages, the Red Cab Co. 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Id.

Plaintiff claims that her damages from the tortious interference claim are $200,000 because of her inability to buy her father's house in New Jersey with a list price of that amount. (FTR 11:57:15 – 11:58:33.) Under Georgia law, a defendant is liable for all damages proximately caused by its tortious interference with a potential business

5

relationship. See Duke Galish, LLC v. Manton, 832, 662 S.E.2d 880, 884 (Ga. Ct. App. 2008). The general measure of compensatory damages is the lost benefit that was expected from the transaction. See Hayes v. Irwin, 541 F. Supp. 397, 440 (N.D. Ga. 1982) aff'd sub nom. Hayes v. Irwin Trading, 729 F.2d 1466 (11th Cir. 1984).

Plaintiff's damages from the tortious interference claim are, in all likelihood, nothing because she still owns the rental house in McRae, Georgia, the potential of a § 1031 exchange still exists for her, and the house in New Jersey owned by her father is still available to her for $200,000. However, fully crediting Plaintiff's belief that a § 1031 exchange is permanently lost to her, her damages would be the capital gains tax that she will now be forced to realize upon the sale of the rental house as a result of her alleged inability to perform a § 1031 exchange. Her damages would not be $200,000, the list price of the New Jersey house, because it cannot reasonably be said that the benefit of such a transaction to her would be the full amount paid for the house.

Plaintiff testified at the hearing that the total in capital gains she would defer by entering into the § 1031 exchange would be approximately $43,000, the amount of gain she would realize from selling the rental house at issue and another property she wished to include in the § 1031 exchange. (FTR 12:48:50 – 12:49:20.) Plaintiff also testified that she has owned both properties for approximately ten years. (FTR 12:49:20 – 12:49:46.) Although Plaintiff could not give her marginal tax rate at the hearing, assuming the highest long-term capital gains rate of 23.8%, the maximum possible benefit to her from the § 1031

exchange, and thus the most in damages she could recover, is $10,234, equal to 23.8% of $43,000. See 26 U.S.C. §§ 1(h)(D), 1411 .

As to Plaintiff's vandalism claim, she claims repair damages of $4,300. (FTR 12:10:45 – 12:16:05; Exhibit 2.) Although the evidence shows that most of the repair work was done *before* Defendants rented the house, the Court will give Plaintiff the benefit of every doubt and include all repairs in the total. In regard to Plaintiff's malicious prosecution and harassment claims, Plaintiff claims $1,000 in travel expenses. (FTR 12:17:55 – 12:18:49.)

In regards to the fraudulent inducement and intentional misrepresentation claims, Plaintiff testified that her damages are $40,000, the price she believes a buyer would have paid for the rental house. (FTR 12:32:43 – 12:33:01.) Under Georgia law, the damages from a fraudulent inducement claim are the difference between the deal bargained-for and what was actually received. See Browning v. Stocks, 595 S.E.2d 642, 645 (Ga. Ct. App. 2004). Putting aside the fact that Plaintiff never secured a buyer for the rental house, Plaintiff testified that she wanted to sell the rental house as part of the § 1031 exchange. Thus, the benefit of a sale to Plaintiff would not be the sale price of the house, but rather the $10,234 tax benefit of the planned §1031 exchange. Because Plaintiff alleges this same injury in the tortious interference claim, there are no unique damages to Plaintiff resulting from her fraudulent inducement and intentional misrepresentation claims.

In sum, giving Plaintiff the benefit of every doubt, her special damages amount to no more than $15,534, a far cry from the $75,000 required for diversity jurisdiction under 28

U.S.C. § 1332. Although Plaintiff testified that she suffered emotional distress from defending herself in the proceedings relating to the arrest warrant and personal injury lawsuit, she did not introduce any evidence to suggest she suffered a severe degree of distress. (See FTR 12:18:49 – 12:25:35.) Indeed, she testified generally that she suffered high blood pressure, depression, fatigue, and inertia, none of which were severe enough to disrupt her work schedule or personal life.

The Court is not required to divine some amount of emotional distress damages in order to determine whether these damages, aggregated with the damages from her other claims, meet the amount-in-controversy requirement. See Lowery v. Alabama Power Co., 483 F.3d 1184, 1215 (11th Cir. 2007); Love v. N. Tool & Equip. Co., CV 08-20453, 2008 WL 2955124, at *5 (S.D. Fla. Aug. 1, 2008). Plaintiff's testimony certainly does not carry her burden of proving a likelihood that the trier of fact would place a value on her emotional distress that would be sufficient to bridge the wide gap between her special damages of $15,534 and the jurisdictional requirement of $75,000.

Finally, Plaintiff claims punitive damages for Defendants filing a false counterclaim against her in this proceeding. (See doc no. 30, p. 11.) The Court construes this as an abusive litigation claim under Georgia law which cannot be brought, unless the claim is solely for attorneys' fees, until the termination of the alleged abusive civil action. Hallman v. Emory Univ., 483 S.E.2d 362, 365 (Ga. Ct. App. 1997). Because Plaintiff is proceeding *pro se*, attorneys' fees also would be unavailable to her. Furthermore, punitive damages are not available under Georgia law for an abusive litigation claim. See Snellings v. Sheppard,

494 S.E.2d 583, 586 (Ga. Ct. App. 1997) ("[P]unitive damages are excluded from the tort of abusive litigation."). Even construing Plaintiff's demand for punitive damages as applying to all of her claims, there is no clear estimate as to the amount of punitive damages, and the Court declines to speculate when determining the amount in controversy. See Mustafa v. Mkt. St. Mortgage Corp., 840 F. Supp. 2d 1287, 1292 (M.D. Ala. 2012); Lowery, 483 F.3d at 1215. In addition, Plaintiff's claim for "deterrence damages" cannot be legally distinguished under Georgia law from her claim for punitive damages. O.C.G.A. § 51-12-5.1.

In sum, Plaintiff's measurable damages amount to no more than $15,534, a far cry from the $75,000 required for diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff's claims for emotional distress and punitive damages are also woefully inadequate to bridge the gap between her special damages of $15,534 and the jurisdictional requirement of $75,000. Accordingly, the Court lacks jurisdiction over this case, and it should be dismissed.

## IV. CONCLUSION

Based on the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's amended complaint be **DISMISSED** for lack of subject-matter jurisdiction and this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 2nd day of October, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA